The first case on our call this morning is Agenda No. 5, 130539 Piasa Armory, LLC v. Kwame Raoul Counsel for the Appellant, are you prepared to proceed? Counsel? Good morning. May it please the Court, Deputy Solicitor General Alex Hemmer for the Attorney General. For 60 years, the General Assembly has enacted venue rules that channel civil litigation towards certain counties and away from others. The Circuit Court in this case held that one of those venue rules, Section 2101.5 of the Code of Civil Procedure, violates due process principles by requiring that some civil cases, cases challenging state statutes and regulations on constitutional grounds, be brought in Sangamon or Cook County. The Circuit Court did so on the thinnest possible record. Two declarations asserting that it would be more, quote, convenient to litigate this case in Madison County than here in Sangamon County, an additional hour away. That showing cannot be enough to establish that a venue rule violates the due process clause. If affirmed, the Circuit Court's opinion would pave the way for due process challenges to every venue rule in the Code of Civil Procedure. Counsel, can we somewhat lay the foundation, is this an as-applied challenge or a facial challenge? So you'd have to ask Plaintiff's Counsel how he understands the scope of the due process claim here. The Court's opinion certainly is a facial, a facial holding. It holds that the statute is unconstitutional as to anyone who does not reside in Cook or Sangamon counties. And so understood, I think the Court's opinion is clearly incorrect because the statute is constitutional in many cases, including Plaintiff's own case. And that's why I think, you know, although we would welcome an opinion sort of explaining that the court is categorically constitutional, constitutional in many cases, at minimum we think the Court should reverse on the basis of the present record in which Plaintiff supported its due process challenge only on the basis of this sort of assertion of inconvenience. And we have this discussion about inconvenience. Is that the right inquiry? Is that what we should be asking ourselves? Do we need to even address, you know, form nonconvenience here in this matter? No, Your Honor. You do not need to address form nonconvenience, especially now that Plaintiff, as I understand it, has sort of, you know, foregone any argument about that issue. Again, you can talk to him about that, but that's my understanding of the scope of the case. And as to your original question, Justice Holder-White, no, inconvenience is not the applicable standard. We think the applicable standard is set out in this Court's 1990 opinion in Williams, which is the sort of only Illinois case ever applying the Matthews v. Eldridge due process framework to a venue rule, and it supplies the decision rule here. Under Williams, a state venue rule violates due process principles only when it operates to completely deny a Plaintiff access to the courts, because only in that case are the first two prongs of Matthews met. Section 2101.5 plainly does not have that effect here. It does not have that effect in any case involving a facial constitutional claim to a challenge to a state statute, and so there is no due process violation. So Williams is an unusual case. As I said, it's the only case in which this Court or any Illinois court has ever found a state venue rule to violate due process principles, and the Court emphasizes that point repeatedly. It says that courts generally, quote, cannot interfere with the legislature's authority to set venue rules, and the Court acknowledges that it had never declared a venue statute unconstitutional before the statute it issued. But Counsel, did the Court say that in Williams, at least, the venue provision was arbitrary and unreasonable? That's true, Justice Overstreet, but the venue rule in Williams was genuinely unusual. It allowed a state agency to bring cases as a Plaintiff against student loan borrowers who had defaulted on their debts in Cook County, regardless of where the borrowers lived. But what about, say, someone lives in Union County? Isn't it arbitrary and unreasonable to make them come to Sangamon County to make their constitutional argument? So it is not, Justice Overstreet. You know, returning to kind of the way that the Williams Court approached it, which, again, I think is the sort of standard that this Court should apply, you know, the Court looked at the Matthews test, the Matthews versus Eldridge test, under which you balance the Plaintiffs, the sort of asserted private interest, and the likelihood of an erroneous deprivation of that interest against the government's interest. And what the Court said is that in a due process challenge to a venue rule, you know, the private right of interest, the private interest at issue is the right of access to the courts. And that interest, there's a risk of erroneous deprivation of that interest only if a venue rule operates to completely deprive the litigant of access to the courts. Now, Plaintiff here has never argued that that standard is satisfied. It is not satisfied in the large majority of cases in which litigants assert facial constitutional challenges to state statutes. And the reason for that, as this Court has itself explained over and over again, is that in a facial challenge to a state statute, facts about the Plaintiff itself, its own course of conduct, its behavior, you know, all of that is irrelevant. Facial challenges to state statutes and regulations generally present only pure questions of law. And in cases like that, there is really no likelihood, again, setting aside the kind of Williams fact pattern in which you have, like, an indigent plaintiff, someone who really has no ability to access the courts, you know, absent in their home county. Counsel, how do you know that all the plaintiffs who seek to access the court under the statute that's an issue here aren't indigent or have some of the same factors that the Williams students would have? Of course, Justice Cunningham. I mean, I think the Court could certainly leave open the possibility of an as-applied challenge to this venue rule in cases that look like Williams, where there is an indigent plaintiff, where there is some sort of genuine allegation that it would be impossible to access the courts in Cook or Sangamon counties. I think doing so would be, you know, not only appropriate, but totally consistent with Williams. But this is not a case like that. Plaintiff has never alleged that it is unable to access the courts in Cook or Sangamon counties. In fact, I think in its answering brief, plaintiff kind of concedes as much. It says, you know, look, we could do this, but we would prefer to present our case in our home county. And, you know, that is understandable. But as we explained in the brief, you know, essentially all venue rules have the effect of limiting the context in which plaintiffs can proceed on claims in their home counties. All venue rules, including the general venue statute, section 101, operate to set venue either where the defendant lived or where the sort of course of conduct occurs. So a plaintiff does not generally have the right to kind of assert, you know, hey, it's inconvenient for me to bring this lawsuit in the defendant's home county. I am entitled to bring it in my home county. But that is the claim that plaintiff is asserting here. Counsel, what's the government's interest in asking this court to enforce this statute? Of course, Justice Neville. So, you know, what we explained in the opening brief is that the General Assembly sort of looked at the rise in constitutional litigation over the last five years, often in kind of cases in, you know, by litigants asserting essentially parallel or substantively identical claims in courts all across the state. So, for instance, the litigation against the assault weapons ban, the litigation against the Safety Act, and concluded that it would best serve the public if that litigation was centralized in the first instance in the counties that house state government. Well, your opponent argues that the Attorney General has attorneys throughout the state. So it wouldn't inconvenience you to defend in another county, would it? Of course. And that's true. We do have, you know, regional offices across the state. And so, you know, we're really not here kind of relying on the sort of difficulty to our office. But the General Assembly looked at this problem and it concluded that the kind of most reasonable response to it was to take this litigation, which is being sort of these, you know, disparate courts across the state and bring it to courts that had substantial experience with the kinds of public law issues that arise in these cases. And it adopted, and you can look at the sort of floor transcript for this, you know, it adopted a model that it has used before. There are, you know, 15 or 20 other statutes that say if you want to bring sort of administrative review law challenges to, you know, decisions of the government, you have to do that where the government lives in Cook or Sangamon. And so what the sponsor said is we're just going to import that principle from these administrative review statutes into this principle too. And we don't think that that violates due process principles as a general matter for the same reasons that it doesn't violate due process principles in those cases either. And it's hard, I'd be hard pressed to, you know, say how the court could affirm the circuit court's opinion here while not raising questions about those statutes as well. Counsel, you mentioned the various challenges to the assault weapon ban and then also the Safety Act. And I maybe would also think of some of the COVID litigation as well. So there were challenges in each one of those cases. And what you say is, and the record will show that, is that those were filed all over the state. And am I correct that what happened was that those cases were consolidated so there would be one opinion in each one of those cases? Yeah, that's true. It occurred somewhat differently in each context. That's what happened in the Safety Act cases. We consolidated all of them under this court's Rule 384. That didn't happen in the assault weapons ban cases. How about the COVID case? Weren't all the cases consolidated into Sangamon County? In the COVID cases, this court entered an order under Rule 384 consolidating a large number of COVID cases into Sangamon County. My understanding is that what then happened is that plaintiff's attorneys would file new cases outside the scope of that order. And again, we're not relying principally on the burden to our office here, but then there would be collateral litigation about whether those cases could be brought to Sangamon County under the terms of this court's Rule 384 order. Or instead, as the plaintiff's attorneys argued in those cases, there was something different about them that allowed them to kind of go forward in Madison or Kankakee or something like that. So I actually think the COVID cases are a good example of the kind of chaos and uncertainty that can occur when this kind of litigation is occurring in counties all across the state. You know, I would also point out that, you know, one of the kind of words or phrases that is being thrown around in this litigation, I'm sure you'll hear plaintiff's counsel use this, is sort of forum shopping or venue shopping. I do think the COVID cases are a good example of why that is not true. You know, the Sangamon County Circuit Court took a very serious look at those cases when they were brought. Our office did not prevail in all of those cases. In fact, we suffered multiple defeats. So I do not think this is a case about forum shopping, trying to get a favorable forum, a judge that's going to side with us. This is about trying to, as the General Assembly explained, consolidate and centralize and make more efficient constitutional litigation against the state. But the courts in these examples, the courts handled that. We consolidated. That's true. That's true, Justice Overstreet. There was a Rule 384 order entered in two of those three cases. I mean, I do think what that illustrates, Rule 384 is very helpful. You know, we do view it as a little bit of a kind of break glass in case of emergency. You know, like when there is truly a kind of overwhelming amount of litigation occurring across the country. That has been a very useful sort of backstop. But I think the General Assembly reasonably concluded that more work could be done to kind of centralize constitutional litigation in the counties that house state government. And as this court explained in Williams, you know, the court's role in looking at venue statutes is generally not to ask, is this a good rule or a bad one? We have enacted the same rule. Instead, the courts look at venue, treat venue rules with a great deal of deference and ask only whether there is a kind of truly unreasonable sort of choice made, one that violates individuals' constitutional rights. Let's put consolidation aside in the case of someone who lives in, say, the Second Circuit.  Why is it not unreasonable or arbitrary to say somebody who wants to challenge the constitutionality of the statute, they live in the Second Circuit, they've elected their own judges in the Second Circuit, and that's 12 counties, so it's not just one. The judges they have elected, one of those judges should not hear this. Why is that? Instead, a judge in Sagamon County or Cook County, instead of one of the judges that citizens of one of these circuits have elected. Why is that not unreasonable? Why is that not blatant forum shopping? So I guess I would go back to this court's opinion in Williams. You know, although it's true that it uses the word unreasonable, I think it's clearly not suggesting that courts should look at venue rules and decide whether they're kind of like right or wrong. Instead, the court said that courts should look at those venue rules with a substantial degree of deference. You know, treating the General Assembly's conclusion about how best to sort of channel litigation as presumptively reasonable, and it would as it would in any other constitutional challenge. You know, the facts of Williams, I think, make clear that the standard for finding a due process violation is very high. Certainly, you know, as Justice Cunningham and I were discussing, it's possible that a litigant who wants to bring its case in the Second Circuit, you know, might be able to make out an as-applied due process violation if the facts of his or her case look like the facts of Williams. You know, where the statute, where the venue rule would operate to kind of completely deprive or effectively deprive that individual of access to the courts. But as a general rule, it does not violate due process principles to require that individual to bring a lawsuit in a different county any more than it violates due process principles to, as the general venue statute does, generally require such a litigant to bring such a lawsuit in the county in which the defendant resides where the transaction occurs. And there are plenty of examples that we cite in the opening briefs of other venue statutes that, although they don't use the words Cook or Sangamon, they also prevent the plaintiff from filing suit. You know, the Second Circuit plaintiff from filing suit in the Second Circuit. The plaintiffs are often required as a result of venue rules to go somewhere else to bring suit. And that is not an unreasonable choice on the part of the General Assembly. Counsel, there's been some discussion about COVID and how those cases were handled and how that impacts that. I wonder, should we be considering at all the times in which we currently live and the technological advances that we have experienced with COVID? We all know that we can have court on Zoom and we don't have to travel and things like that. Is that something we should be considering in this analysis? Absolutely, Justice Holder-White. And we discussed this in the brief. I mean, this court has done a tremendous amount of work via its rules promulgation to make sure that all litigants are able to participate in the litigation process using technology. The rules allow them to appear remotely. They allow them to present evidence and deposition testimony remotely. You know, this is not even the world of Williams, I think, in that there are many, many circumstances now in which someone can, even a plaintiff, can litigate his or her own case from the comfort of his or her home office in the Second Circuit without ever having to travel to Sangamon or Cook. And indeed, and we cite these cases at page 19 of the opening brief, you know, the appellate courts have repeatedly rejected due process challenges to rules that permit parties or witnesses to present evidence telephonically or remotely because they've explained that there are sufficient procedural safeguards to make sure that the plaintiff is allowed to kind of present their case and to hear the evidence against them. And those rules, you know, militate strongly in favor of an opinion reversing the circuit court in this case. So my yellow light is on. I will, if the court has no further questions, I will, you know, hand over the podium and be prepared to discuss these issues more. Thank you very much, counsel. Counsel for the appellate. Thank you, your honor, your honors. May it please the court, Madam Chief Justice, counsel. My name is Thomas Magg, I represent Pius Arbery. And of course, this is a challenge to the recently enacted Vigna statute, which purports to limit constitutional challenges against state agencies and personnel in their official capacity to only Cook County and Sagamon County. Counsel, the foundational question, I'm going to ask the same foundational question that was asked earlier. Is this a facial or an as-applied challenge? The trial court decided on an as-applied challenge expressly, not a facial challenge. The trial court expressly conceded that the statute, to the extent that it merely permits residents of Cook or Sagamon County to file in their own county, is entirely constitutional. As I understand the difference between facial and as-applied challenges, as long as there is some circumstance where a statute would be constitutional, it would not be a facial challenge. That means that this is an as-applied challenge. I'm not sure I understand the logic here. I mean, the fact that it's more difficult to show the unconstitutionality of a facial challenge doesn't mean, therefore, it must be as applied. Here, you're saying that everyone in the state, other than those who live in Cook and Sagamon County, are affected by the statute, and therefore, the analysis should be as to how each one of those individual citizens is affected? It would be as applied to persons who do not reside in Cook County or Sagamon County, which, as I understand it, would be an as-applied challenge. The concern I have is that you do make arguments about convenience, and that sounds like factual inquiry as to each one of the specific plaintiffs. Well, I think it's per se inconvenient to say that a resident of, let's say even an adjoining county to Cook or Sagamon County, is precluded from filing suit in their own county where they reside, where they pay taxes, where they elect judges, and where they're being directly affected, and travel across a county line where they don't elect judges, where they don't pay taxes, and where they're not being affected in order to file a constitutional challenge. Are you challenging, then, all venue statutes that limit where cases can be filed? We know there are many that limit the filing of certain claims in Cook and Sagamon, and certainly the statute itself, the general venue statute, talks about the residence of the defendant or where the transaction took place. Are all those unconstitutional? Well, clearly not. I mean, if you're talking about the general venue statute, for instance, in this case it would clearly be constitutional because it would allow my client to file this suit in Madison County where they're being directly affected by the same token. In a tort case, let's say. In a tort case. In a tort case, the plaintiff is going to have to file where the accident took place or where the defendant lives, correct? Correct. And that may not be where the plaintiff lives. No, but it means that at some point the plaintiff was in the location where something took place so that they shouldn't be surprised that they may have to litigate there. For instance, if my client went to Cook County and was involved in an auto wreck, clearly it wouldn't be unreasonable to require my client to litigate in Cook County that auto wreck case because they affirmatively went to Cook County and were involved in an automobile wreck. By the same token, most of the, if not all, most of the statutes that purport to limit suits against the state to the same county are administrative review actions. They're appeals. You don't call witnesses in those actions. You don't have a trial. So let's go back a minute. The claim you are making here, subsequent claim, is an attack on a statute. Correct. It's a constitutional attack. What evidence would be introduced at that kind of claim? In your second amendment, this statute violates the second amendment. Your idea about inconvenience for witnesses for a trial, how would that work? I don't know if I understand. The underlying statute being challenged, the non-venue challenge in this case, is a First Amendment case, among others. There are other accounts in there. But how we would simply call in the owners and or employees of Pine Saw Armory, say, please testify as to what your business model is. Please testify as to your awareness of the statute. But that's a constitutional, facial constitutional challenge, correct? Yeah. We're in a facial constitutional challenge, and you think there are factual issues at work? Well, if nothing else, we have to show that my client is standing to bring the case. I mean, it may not be difficult or unique facts, but it is something that has to be a record of some kind. Counsel, earlier Justice Holderwhite asked a question about, should we consider now the advances in technology in terms of making it easier to litigate from anywhere, no matter where venue is established. Should that be something that we should consider, that the times have changed and your clients could be able to participate remotely? If we were talking about a case from the 1800s before modern automobiles and interstate highways, I would probably say yes. But that's not what we're talking about. We're talking about remote appearances, Zoom, that kind of thing. And perhaps it's fortuitous that I grew up in a legal family, and one of my earliest memories is my grandfather sitting at his kitchen table doing an evidentiary hearing, or not an evidentiary, an argument with, I believe, Judge Foreman, who was a federal judge, from his kitchen table on the phone. So remote appearances have been around with us in some form for decades. But in my personal experience, the actual evidentiary hearing is something that is best done in person. Remote appearances are dandy for status conferences, for relatively minor affairs to save drive time for managing the docket. But when you're presenting to a jury or a judge actual evidence, and you're having a witness authenticate documents, in my personal experience, nothing beats or nothing is better than just being there, handing the witness the document, and there's no more can you flip through the computer and having technical problems with different people having different versions of Zoom and some person's technical skills not being the same as others. Being there solves all of that. And so, no, I don't think the fact that in some circumstances remote appearances like through Zoom are available should change the analysis one iota. Counsel, can I ask you to talk about the Williams case, which seems to be the key case that we need to look at?  The court said, this court, in fact, has never declared a venue statute unconstitutional. But we have stated that a law fixing venue could be so arbitrary and unreasonable as to deprive defendants of due process. So I ask you, how is the plaintiff in this case deprived of due process by having to drive 90 miles? All right. Of course, it was the issue of the defendants, not the plaintiff's due process in Williams, hence the reason the court focused on the defendant's due process rights in that. Both plaintiffs and defendants have due process rights, and I don't think that they're substantively different. Unlike the argument of the state, the issue is not whether or not the plaintiff is totally barred from the courthouse. The standard is not, did the state take a welding torch and weld the door shut, which seems to be their argument, as I understand it. In Williams, applying the Matthews test, it is a requirement of meaningful access to the courts, not a total prohibition or a total bar. By having to travel greater and greater distances, Madison County and Sangamon County being about 90 minutes each way, that's not just for the lawyer, that's for the client, that's for each witness. Whether or not the court in Sangamon County has the power to compel compulsory process and the like, if all of the witnesses, such as in this case, either reside in or do business in Madison County, the court has the power to compel unwilling witnesses. I'm not sure there would be any unwilling from the plaintiff's side in this case, but if that problem arose, it would exist. Again, how is your client deprived of due process? Deprived. Deprivation of due process. Not inconvenience. Deprived of due process. Because there is a risk of erroneous deprivation by forcing my client to litigate in a foreign venue, foreign jurisdiction, foreign being a different county, and therefore making it far more difficult for my client to present his evidence in support of his fundamental claim. Obviously, the farther away from the court in question, the greater that would be. As it relates specifically to my client, it's basically a full day for any witness, which some witnesses are easier to get to appear than others. Documents have to be transported. Of course, I'm applying a foreign non-convenience law. This court has said moving documents is relatively easy. Truth be told, it is, but it is far more difficult to litigate hours away from your home forum than it is in your home forum, especially when there is no compelling interest or reason to force you to litigate in a foreign jurisdiction or foreign county, except that the state does not like being sued in different states or different counties. Furthermore, there is an increased likelihood that the plaintiffs would be unable to present their claim in the foreign county, just as there is an increased likelihood of defaults for all student loan collections in Cook County. If you can't get to Cook County or Sangamon County or pick your county, and your risk as a defendant being defaulted, the same risk applies in being unable to present your case. You still lose your case, and that is the risk of due process that you can't present your case because it's farther away than your home county where you could easily present your case, again, with no reason except the state's arbitrary whim as to why you should have to file it there. One of the arguments that's made in terms of the government's interest is that the legislature itself said, quotations from the legislative history, concern about multiple cases challenging statutes on the basis of unconstitutionality, multiple cases being filed all over the state, which raises issues of, for example, inconsistent decisions and some degree of burden on the courts in terms of how they've been managed. Is that not a valid governmental interest? I don't believe that's a valid governmental interest. I think that's looking for justification for the legislature's action. This court clearly has, under its general supervisory authority, I think it's rule 383, the power to consolidate cases in one county if it's actually going to be a problem. And I've seen this court exercise that authority many times in my career. I know it's done many times that I'm not aware of because I don't monitor the court's docket. So the court could deprive due process rights, but the legislature can't? The court cannot deprive due process rights. I think there's an Illinois Supreme Court decision that says to the effect the court has the power to enact an incorrect decision as well as a correct decision. But when you get right down to it, if the court consolidates it, it doesn't necessarily consolidate them all in Springfield or Cook County. I've seen them consolidated in Williamson County. I've seen them consolidated in other counties that have some reasonable connection to the litigation. So presumably the Supreme Court, in exercising its supervisory authority, would take into account a reasonable location for the litigation. I would also note that meaningful opportunity, the court appears at least six times in the Williams case, completely preclude, does not appear one time in that case. As near as I can tell. And I also note that the Williams case has also pointed out that in Williams, about half of the cases in Williams could have been brought in Cook County anyway, simply due to the population and relative number. And that's probably true in this case as well, which means that to the extent that the state is trying to consolidate these things in one or two forums, most of those cases are probably, about half of those cases would probably be filed there anyway. It's how it affects the other half that is at issue in this case. And the court asked a question, and there's of course been a great deal of amicus briefing on forum nonconvenience. I do not believe that this is a forum nonconvenience case. Flat out. I don't think personally that this is a case to decide whether or not this court should abolish or reaffirm forum nonconvenience. It just doesn't seem to me to be before the court. But the factors in both Williams and Matthews track the forum nonconvenience analysis, which is why those forum nonconvenience cases were presented to the trial court and then filed in this case. They track convenience, parties of relative access to evidence, and all other practical problems, which goes back to the due process analysis. So whether or not this court abolished forum nonconvenience or not, it would still have to apply those standards in the due process analysis. Counsel, I have just a basic question. You may have already answered this. Is it your position that the legislature can never enact a statute that requires a particular category of cases to be filed in a particular location? Is that your position just across the board, the legislature does not have that power? As I understand your question, no, I do not believe that that is our position. Well, I'm asking you to explain what your position is. Sure. It is our position that the legislature, while they might have broad authority to enact venue provisions, in enacting them they cannot violate a constitutional provision. One of the constitutional rights is to due process reasonable access to the courts. In enacting a venue statute, we believe that the legislature is limited to enacting a venue provision that provides reasonable access to the courts for litigants. For instance, in insurance cases, there's a provision that says that a plaintiff can file in their home county against an insurance company. I don't see that as being unconstitutional. I think in the constitutional context, the legislature could have enacted a statute that says a plaintiff must file a constitutional claim in their home county. I don't see that as being unconstitutional. But what they have done, it says you're not allowed to file in your home county unless you fortuitously live in one of the two counties we, the legislature, have selected, for whatever reason, and that you must litigate a legislature fortuitously in one of these two counties. In a county that potentially has no witnesses, you must potentially invoke the citizens of the county to perform jury duty. This is not a jury case, right? This is not a jury case. This is deck action, right? No, it's a deck action. Right, right. Potentially. It involves a whole host of factors that have nothing to do with the two fortuitously selected counties by the legislature. They are arbitrarily selected. They deprive a significant portion of the state of reasonable access to the courts, including my client in this case, and we would ask that your honors affirm the trial court. Unless there's any further questions, I see that I have the yellow light on, and I presume we're pretty close to out of time. Counsel, can I just say, I'm sorry, can I ask one more question? Yes, ma'am. So a ruling in your favor, would it potentially call into question the numerous other venue statutes that are related to agency decisions? What impact would it have? I don't believe it would have any effect whatsoever on any other existing venue statute, especially none that deal with agency decisions, because as I stated earlier, those are appellate decisions. Those are the equivalent of, there's already been an administrative record created somewhere with presumably fact witnesses' testimony, and what's being decided by what would be a trial court, a circuit court, is they're acting as a court of appeals, not as a trial court. And I see that as substantially different than what was being done here, is that we're limiting the trial court to only two counties. I hope that answers your question. Thank you, Chief, for the indulgence. Thank you much. Thank you very much. Counsel to reply. Thank you. Just a few points. So I want to begin by talking a little bit about Williams, because Mr. Magg kind of repeatedly challenged the idea that Williams requires a plaintiff to show kind of the effective denial of access to the courts. And I want to point the court to two specific places where I think it can find this point. So first, you can find it in the court's discussion of the private interest, which is pages 42 to 46. The court goes to great lengths to align Williams with the line of U.S. Supreme Court precedent about the right of access to the courts. All of those U.S. Supreme Court opinions involve state statutes that completely bar litigants from accessing the courts. And this court explained in Williams that the rule at issue there was like those cases because, quote, this is page 45, and I hope this addresses Mr. Magg's concern, the statute, quote, effectively denied the litigants here full access to the legal process. That is the point that the Williams court wanted to make. The statute falls within this line of cases, and so implicates a private right cognizable under the due process clause because it effectively denied these litigants full access to the legal process. And then the court says the same thing at the very end of the kind of analysis, at page 63, where it says, standing alone, requiring venue to be in a particular county does not necessarily infringe upon plaintiff's right of access to the courts, but here, quote, the burden of an inconvenient forum combined with the indigence of the class members and the lack of recourse to any other forum meant that the venue rule there, again, I'm quoting, effectively deprived the litigants of any means of defending themselves in these actions. So I think the scope of the court's opinion in Williams could not be clearer. What plaintiffs are trying, what plaintiff is trying to do here is to kind of excise like the entire part, second part of that last quote, and say that Williams was entirely about the burden of an inconvenient forum. But that is not what the court's opinion holds. It expressly links that point with the fact that the class members there were indigent and could not access the courts at all if the venue rule were to be upheld, and that the venue rule was unconstitutional because it deprived people of access to the courts entirely. Those are the court's words, and that's not what section 2101.5 does. Now, I want to talk a little bit about the record here. I mean, I think the standard that plaintiff is trying to push is the idea of some lesser sort of standard about kind of meaningful opportunity of access to the courts. Even if the court were to say that that standard is the appropriate one, plaintiff has not come anywhere close to showing that section 2101.5 deprives it of a meaningful opportunity to access the courts. I heard plaintiff's counsel talk about the possibility of sort of owner or employee testimony, but I did not hear him identify any reason why that testimony might be relevant in its facial constitutional challenge to the Firearm Industry Accountability Responsibility Act, any reason why an evidentiary hearing would ever have to be held in this case. Indeed, it's extremely unlikely that any evidentiary development here would ever be required. You know, we cite in the opening brief essentially all of the cases that have come up to this court on a facial constitutional challenge to a state statute, and I don't believe an evidentiary hearing was held in any of them. No evidentiary development ever occurred in any of them, and that's because these cases present pure questions of law. They do not require the development of a factual record of the kind that plaintiff is describing here. That point also sort of disposes, I think, of plaintiff's argument about the comparison between this venue rule and the venue rules that govern the administrative review law cases that we describe in the opening brief. You know, a plaintiff says that those cases are different because they are essentially appeals. They don't involve witnesses. They don't involve evidence. But for the reasons that we've discussed, a facial constitutional challenge to a state statute or state regulation is identically positioned. It also does not involve the presentation of witnesses or meaningful participation by the plaintiff or any record development at all. And so I think the analogy is exactly right, and that's why I think Plaintiff's Counsel had no effective answer, Justice Rochford, to your question about how this court could write an opinion that would not call into question all of those statutes as well. I want to briefly address the form nonconvenience point. You know, in its brief, plaintiff, I think, disclaimed any sort of reliance on form nonconvenience, but then at the podium I heard Plaintiff's Counsel again assert that the form nonconvenience analysis is essentially identical to the Matthews analysis, which is exactly what kind of, you know, got us down this hole in the first place. You know, that could not be farther from the truth. The doctrines are completely diametrically opposed. In a due process challenge to a venue rule, the court presumes that the rule is constitutional and that venue is proper in the counties named in the rule, and it does so cognizant of what the court described in Williams as the General Assembly's unquestioned power to determine venue in civil cases. On a form nonconvenience motion, by contrast, a court sort of asks from first principles where it makes more sense for a case to be heard, where the evidence is, where the parties are, and the like, and that's exactly the kind of argument that plaintiffs sort of try to advance below is that the court here should just sort of, you know, look at who has more evidence and then sort of set venue there. We really urge the court not to equate these two doctrines. Doing so would really open the floodgates for due process challenges by plaintiffs to venue laws, and it would make it essentially impossible for the General Assembly to ever set venue rules without them being subject to an endless stream of sort of requests for exceptions. The last thing I want to touch on, unless the court has further questions, is sort of the scope of the court's opinion. I mean, I think that the court certainly could reverse the decision below only on the ground that plaintiff failed to shoulder its burden to show an as-applied due process violation given the thin record that it put forth in opposition to transfer, and we would be perfectly comfortable with that opinion. But I do think the circuit court's opinion sweeps more broadly than that, and plaintiff's counsel sort of embraced that idea, held that it violates the due process rights of every plaintiff that does not live in Cook or Sangamon County. That is exactly backwards, you know. Section 2101.5 is facially constitutional in that it is constitutional in at least some applications. But I think that this kind of gets at a broader point, and one that we would urge the court to make if it agrees with us, which is that Section 2101.5 is generally constitutional, too. It is constitutional in any case in which a litigant brings a facial challenge to a state statute or regulation, like plaintiff's own challenge to the Firearm Act. In cases like that, there will essentially never be a risk of erroneous deprivation of a private interest because a plaintiff will never have to present facts about his or her own circumstances that might be uniquely available in his or her own county. That's clearly the kind of case that Section 2101.5 was designed to address. It just sort of beggars belief to think that it violates due process to require cases that require no evidentiary development to be brought in the seat of government, just as countless other administrative law statutes do. We respectfully urge the court to say that, to hold not only that the due process claim here fails because plaintiff failed to develop the record, but because, as a general matter, it does not violate due process to require such claims to be brought in Sangamon County. So unless the court has questions, we ask the court to reverse the decision. Thank you very much. This case, Agenda No. 5, No. 130539, Piazza Army, LLC v. Cuamarello, will be taken under advisory. Thank you both for your work.